UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWIN MANUEL RIVAS GOMEZ,

Petitioner(s),

v.

BRUCE SCOTT, et al.,

Respondent(s).

CASE NO. C26-3505-KKE

ORDER GRANTING HABEAS PETITION

Petitioner Edwin Manuel Rivas Gomez filed a petition for a writ of habeas corpus, asserting that his arrest and detention by Immigration and Customs Enforcement ("ICE") violated the Fourth Amendment and his due process rights. Dkt. No. 12. The Court heard oral argument in this matter on November 9, 2026, and issued a bench ruling ordering Petitioner's release. *See* Dkt. No. 21. Petitioner has since been released. *See* Dkt. No. 22. The Court memorializes its oral ruling in this written opinion.

## I. BACKGROUND

Petitioner is a native and citizen of Guatemala. Dkt. No. 12 ¶ 8. On August 30, 2018, Petitioner lawfully entered the United States through the Miami, Florida airport on a valid visa, which expired on February 27, 2019. Dkt. No. 12 ¶ 18; Dkt. No. 16 ¶ 13; Dkt. No. 17-1 at 4. Petitioner moved to Washington state in or around 2021. Dkt. No. 12 ¶ 18.

Petitioner has worked in construction since his arrival in the United States. Dkt. No. 12 ¶ 21. In 2022, he began working with a company in Lacey, Washington, on insulation installments in private homes. *Id.* Petitioner was arrested by ICE on the morning of June 23, 2026, as he was on his way to work. Petitioner alleges that at approximately 5:58 a.m. that morning, multiple

unmarked vehicles forced Petitioner to pull to the side of the road and effectively boxed his car in. *Id.* ¶¶ 24–25. He states that multiple officers approached his vehicle, though they did not identify themselves as ICE officers, nor were they wearing any visible law enforcement identification. *Id.* ¶¶ 25–26. One of the officers asked Petitioner for his driver's license, which he immediately produced. *Id.* ¶ 27. Petitioner alleges that "[o]fficers said Petitioner's name and informed him that he was being arrested because he was an immigrant" and "gave him no other reason for his arrest." *Id.* According to Petitioner, the officers then placed Petitioner in handcuffs without showing him a warrant and placed him in the back of one of the unmarked vehicles. *Id.* Petitioner was then transported to the Northwest ICE Processing Center ("NWIPC") alongside approximately five Latino men that had also been arrested that morning. Dkt. No. 12 ¶¶ 29, 32. The Government then issued a Notice to Appear ("NTA"), placing Petitioner in formal removal proceedings. *Id.* ¶ 32; *see also* Dkt. No. 17-3.

On July 20, 2026, Petitioner, through counsel, sought custody redetermination. The next day, Petitioner also filed a Form I-589 asylum application with the assistance of counsel based on his fear of returning to Guatemala. Dkt. No. 12 ¶ 33; Dkt. No. 16 ¶ 18. On July 22, 2026, the immigration judge ("IJ") determined that Petitioner did not state a claim, preterminated Petitioner's application for asylum, and ordered Petitioner's removal at the same hearing. Dkt. No. 12 ¶ 33; Dkt. No. 16 ¶ 19. Petitioner filed an appeal with the Board of Immigration Appeals ("BIA") on August 18, 2026. Dkt. No. 12 ¶ 33; Dkt. No. 16 ¶ 21. That appeal remains pending. *Id.* The following week, the IJ also denied bond, finding that Petitioner "ha[d] failed to show that he is not a Flight Risk." Dkt. No. 13-2.

Petitioner filed his petition for habeas corpus on September 18, 2026. Dkt. No. 1. On October 6, 2026, the Court appointed counsel. Dkt. No. 6. Petitioner subsequently filed an amended petition on October 13, 2026, and the Government filed its return on October 26, 2026.

Dkt. Nos. 12, 15. Petitioner filed his traverse on November 3, 2026, and the Court heard oral argument from the parties on November 9, 2026. Dkt. Nos. 18, 21.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Section 1226(a) of the Immigration and Nationality Act ("INA") authorizes arrest and detention "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Thus, ICE officers are "required" "to obtain an arrest warrant before making an arrest for an immigration violation." *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147 (D. Or. 2026) (citing 8 C.F.R. § 287.8(c)(2)(ii)); *see also Da Silva Santos v. Chestnut*, No. 1:26-CV-6439-TLN-JDP, 2026 WL 2620362, at *4 (E.D. Cal. Sept. 4, 2026) ("Arrest without a proper warrant violates section 1226(a)."). "[I]mmigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative arrest warrant issued by an executive official, rather than by a judge." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 825 (9th Cir. 2020). Agents may make warrantless arrests as an exception to the warrant requirement only where the officer, prior to the arrest and with respect to the specific individual to be arrested, "has reason to believe that" the individual is both (1) "in the United States in violation of [immigration laws]," *and* (2) is "likely to escape before a warrant can be obtained[.]" 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). The "reason to believe" requirement is the equivalent of "the constitutional requirement of probable cause." *Tejeda-Mata v. Immigr. Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980). "Together, these standards mean that an immigration officer can know for *certain* that someone is

present in violation of immigration laws, and *still* does not have authority to arrest them without a warrant or an individualized probable cause determination that the individual is 'likely to escape before a warrant can be obtained.'" *M-J-M-A*, 822 F. Supp. 3d at 1172 (citing 8 C.F.R. § 287.8(c)(2)(ii)).

## III. ANALYSIS

### A. Petitioner's Detention Violates Due Process

Petitioner argues that his arrest and detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution,[1] which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. *See* Dkt. No. 12 ¶¶ 77–89, 97–99. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) (quoting *Zadvydas*, 533 U.S. at 690).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Determining whether an administrative procedure provides the process constitutionally due generally requires consideration of three distinct factors:

---

[1] Petitioner also argues that his arrest was unlawful under the Fourth Amendment and the INA and warrants his release. Dkt. No. 12 ¶¶ 49–76. Because the Court concludes that Petitioner is entitled to relief under the Fifth Amendment, it does not reach the Fourth Amendment issue.

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's detention comports with constitutional due process requirements.

1. Petitioner has a protected interest in his liberty.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, where Petitioner has been living freely in the United States with his wife and children for eight years, "the constitution does not countenance fictional erasure of his actual presence in this country—or his concomitant due process rights." *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026). Petitioner entered this country lawfully in 2018 on a valid visa. Though Petitioner's visa expired the following year, courts in this District have recognized a liberty interest where a noncitizen remains in the United States and establishes community ties, including in the visa overstay context. *See Tello Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026); *Huang v. Blanche*, No. 2:26-CV-02157-BAT, 2026 WL 2271901, at *4 (W.D. Wash. July 15, 2026). The Government could have detained Petitioner at any time after the expiration of his visa in 2019, but did not do so until years later, after Petitioner developed significant ties to the United States. *See A.B.J.C. v. Hermosillo*, No. 2:26-cv-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) (finding that government had acquiesced in

petitioner's continued liberty for six years and petitioner's reliance on his freedom created a liberty interest that "cannot be extinguished without due process"). Petitioner is married with three children, has stable employment, and financially supports his family. Dkt. No. 12 ¶¶ 16, 37; Dkt. No. 18 at 16. He has no criminal history, and the record contains several letters of support from members of Petitioner's community, including a letter from his church, his sponsor, and his neighbor, demonstrating Petitioner's substantial community ties. Dkt. No. 1 at 47–58. Thus, Petitioner's interest in maintaining his liberty is strong, and the Court finds the first *Mathews* factor weighs in his favor.

2. <u>The risk of erroneous deprivation of liberty is high.</u>

The Court next considers the risk of an erroneous deprivation and the value of additional safeguards. The circumstances of Petitioner's arrest and detention underscore the high risk of erroneous deprivation of his liberty absent a pre-detention hearing. The Court finds that the Government violated the INA and its implementing regulations where it arrested Petitioner without a valid warrant and no exception authorizing a warrantless arrest applied. The Government does not meaningfully dispute that Petitioner's arrest was unlawful in its briefing. *See* Dkt. No. 15 at 6–8 (arguing only that "Petitioner's claim that his arrest was unlawful does not provide a basis for habeas relief here"). To the extent the Government argues that it had a valid administrative warrant prior to the arrest (*see* Dkt. No. 17-2), the timeline of Petitioner's arrest calls that fact into question. *See generally* Dkt. No. 12 ¶ 56 ("Since all the investigative steps, to the extent any were taken, were conducted on June 23, 2026, the day of Petitioner's arrest, it is highly improbable that ICE officers identified, researched and obtained an administrative warrant in the very early hours of the morning before encountering Petitioner at 5:55am."). And in any event, the record is clear that the warrant was not served on Petitioner at the time of his arrest: Although Petitioner was arrested in Lacey, Washington, the certificate of service on the warrant attests that it was served on

Petitioner in Tukwila, Washington, the city where he was processed after his arrest. Dkt. No. 17-2 at 2. The record also makes clear that the warrant was issued prior to the Notice to Appear, in violation of federal law. *See* Dkt. No. 16 ¶¶ 14, 16. *See generally* 8 C.F.R. § 1236.1(b)(1); *Nguema Alene v. Warden*, No. 1:26-CV-07355-JLT-FJS, 2026 WL 3082895, at *3 (E.D. Cal. Oct. 15, 2026) ("[A]n administrative warrant must be issued prior to a noncitizen's arrest and it must be issued contemporaneously with, or after a Notice to Appear initiating removal proceedings against the noncitizen." (citing 8 C.F.R. § 1236.1(b)(1))). And though agents may effectuate warrantless arrests in certain circumstances, *see* 8 U.S.C. § 1357(a)(1)–(2), those requirements were not met here, and the Government does not argue otherwise. Specifically, the Government does not dispute the lack of probable cause for Petitioner's arrest, nor does it provide any evidence that Petitioner was likely to escape before a warrant could be obtained or otherwise affirmatively argue that it had authority to arrest Petitioner without a warrant.

Finally, when Petitioner was taken into custody, the record reflects no custody determination was made that Petitioner would have been able to appeal to an IJ. The Government admitted it was unable to locate any form I-286 showing a custody determination for Petitioner (Dkt. No. 15 at 2 n.2), which the Court construes as "a concession that no such records exist as to this Petitioner." *Sira v. Mattos*, No. 2:26-CV-00828-RFB-DJA, 2026 WL 1362499, at *3 (D. Nev. May 15, 2026). "The [G]overnment's failure to perform a proper initial custody determination and issue a Form I-286 as to Petitioner runs afoul of § 1226(a) and its implementing regulations." *Titusunta Jimenez v. Blanche*, No. 2:26-CV-02171-RFB-MDC, 2026 WL 2859662, at *2 (D. Nev. Sept. 23, 2026).

Though Petitioner received a bond hearing before an IJ approximately one month after he was detained, it is well-established in this District that "post-deprivation bond hearings do not negate noncitizens' due process challenges to the circumstances of their detention." *Orozco Cortez*

*v. Hernandez*, No. 2:26-CV-03708-JHC, 2026 WL 3168034, at *1 (W.D. Wash. Oct. 22, 2026). *See, e.g.*, *Mendez-Prades v. Scott*, No. C26-2571-KKE, 2026 WL 2921987, at *5 (W.D. Wash. Sept. 29, 2026) ("[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." (citation omitted)); *Garcia Larios v. Bondi*, 2026 WL 1078210, at *5 (W.D. Wash. Apr. 21, 2026) ("Although petitioner requested a bond hearing and in December 2025 the IJ held a hearing, it was after-the-fact; such a hearing 'cannot prevent an erroneous deprivation of liberty.'"); *S.K. v. Hermosillo*, No. 26-CV-789, 2026 WL 936458, at *4 (W.D. Wash. Apr. 7, 2026) ("Although an IJ later made a flight risk finding, petitioner was not afforded proper pre-deprivation procedures at the IJ hearing," so the "risk of erroneous deprivation is high" (citation modified)). That is because, among other things, "such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty," *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025), and "allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless," *Mendoza v. Adelanto ICE Processing Ctr. Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026).

The Court therefore concludes the risk of erroneous deprivation is high because Petitioner was not afforded the procedural protections required by statute and regulations, and Petitioner's arrest was unlawful. Thus, the second *Mathews* factor also favors Petitioner.

3. <u>The Government's interest in detaining Petitioner without process is low.</u>

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. As this Court has ruled repeatedly, the Government's interest in detaining non-citizens without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before

arresting and detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Tello Vazquez*, 2026 WL 1911507, at *3 ("[T]he Court finds that the Government's interest in detaining Petitioner without a pre-detention hearing is minimal: any administrative or financial burdens in providing a pre-detention hearing to Petitioner are outweighed by the risk of erroneous deprivation of the liberty interest at issue."). Thus, the third and final *Mathews* factor favors Petitioner.

In sum, the Court's review of the *Mathews* factors confirms that Petitioner's detention does not comport with due process.

**B. The IJ Abused its Discretion in Denying Bond**

Alternatively, the Court also concludes that the IJ abused its discretion in making a flight-risk determination and denying Petitioner bond. Though Petitioner raised the inadequacy of the bond hearing in his petition (*see* Dkt. No. 12 ¶¶ 34–35, 71) the Government argued in its return that Petitioner had not challenged it, and argued at the hearing in this matter that the Court should not consider the bond hearing issue. The Court finds that while the defects in the bond hearing were mentioned in the petition, the bulk of Petitioner's argument on this point is contained in his traverse. However, the Court concludes that the interests of justice would not be served by ordering additional briefing on this issue. Even accepting the Government's argument that the petition did not sufficiently challenge the bond hearing, the Court will nonetheless exercise its discretion to consider the arguments in Petitioner's traverse, particularly in light of the factual record, and the authority in this District.[2] *See generally Alvarez v. Hernandez*, No. 2:26-CV-02207-TLF, 2026 WL 2200304, at *1 (W.D. Wash. July 30, 2026) (explaining that "a district court

---

[2] Moreover, at oral argument, the Government argued that any failure to issue an I-286 notice of custody determination was harmless where Petitioner later received a custody determination hearing before an IJ and urged the Court to consider the IJ's bond hearing and order. Thus, for this additional reason, the Court finds it appropriate to consider the sufficiency of the IJ's bond determination.

'has discretion, but is not required to' consider evidence and claims raised for the first time after the filing of the petition," including "new claims raised by a petitioner in the traverse").

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but rather determines whether the IJ applied the correct legal standard. *See id.* at 785. In making bond determinations, IJs consider the so-called "*Guerra* factors":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

In this case, the IJ checked a box indicating that bond was denied because "[Petitioner] has failed to show that he is not a Flight Risk." Dkt. No. 13-2 at 2. There are no additional findings in writing that explain the basis for this conclusion, nor any consideration of the *Guerra* factors. "The failure to provide a reasoned explanation is an abuse of discretion." *Hernandez v. Scott*, No. C26-2549-KKE, 2026 WL 2814250, at *2 (W.D. Wash. Sept. 20, 2026) (citing *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014)); *see also Ascencio-Zetino v. Scott*, No. 2:26-CV-02856-DGE, 2026 WL 2686835, at *4 (W.D. Wash. Sept. 14, 2026) ("The Court concludes the unknown IJ abused his discretion in denying Petitioner's bond as there is no indication whatsoever that any of [the *Guerra*] factors were weighed."). The IJ also failed to consider the nearly 100 pages of evidence Petitioner presented that was highly relevant to the *Guerra* factors, including

the "length of his residence in the United States, his substantial family ties, his employment history, and his community support." Dkt. No. 12 ¶ 34. This failure to address highly probative evidence further "undermines the assumption that the IJ considered the evidence and applied the correct standard." *Rivera Rivera v. Warden/Facility Adm'r*, No. C26-3544-KKE, 2026 WL 3093302, at *4 (W.D. Wash. Oct. 16, 2026) (quoting *Martinez*, 124 F.4th at 785).

In summary, upon considering the *Guerra* factors and the evidence in the record—including Petitioner's lengthy residence in the country, substantial familial and community ties, stable employment, and lack of evidence of flight and criminal history—the Court concludes that the IJ abused its discretion in denying bond where no reasonable decisionmaker could find that Petitioner poses a risk of flight.

## IV. REMEDY

Having determined that Petitioner's detention violates his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Tello Vazquez*, 2026 WL 1911507, at *3 ("Courts have granted habeas petitions and ordered immediate release of petitioners arrested for visa overstay without a pre-detention hearing[.]"). It is well-established in this District that the Government's failure to follow its own regulations violates procedural due process and entitles a petitioner to release. *See, e.g.*,

*Quiroz Lopez v. Bondi*, No. 2:26-CV-00767, 2026 WL 923370, at *4 (W.D. Wash. Apr. 6, 2026); *Broche Perez v. Hernandez*, No. 2:26-CV-03088-TLF, 2026 WL 2731579, at *4 (W.D. Wash. Sept. 16, 2026). Furthermore, as explained in this order, due process requires that Petitioner receive notice and an opportunity to be heard before he may be detained. At any future pre-deprivation hearing, the Government must demonstrate the justification for detention by clear and convincing evidence. *See Doe v. Beccera*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025).

## V. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 12. The Court ORDERS as follows:

1) Petitioner shall be released from custody no later than November 9, 2026.

2) Absent exigent circumstances, Petitioner may not be re-detained until after a hearing is held (with adequate notice) to determine whether detention is appropriate. At any future pre-deprivation hearing, in order to detain Petitioner, the Government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

3) The Government shall file a declaration no later than November 10, 2026, documenting Petitioner's release in compliance with this order.

4) Any fee petition shall be filed within the deadlines set forth by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 12th day of November, 2026.

Kymberly K. Evanson
United States District Judge